| | | |
|---|---|---|
| HAROLD D. ISAAC, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 4:13-CV-00411-SNLJ-SPM |
| | ) | |
| IAN WALLACE | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned on the *pro se* petition and amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Missouri state prisoner Harold D. Isaac ("Petitioner") (Docs. 1 & 19). This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). (Doc. 5). For the reasons stated below, the undersigned recommends that the petition and amended petition be denied and the case be dismissed.

### I. FACTUAL BACKGROUND

The following factual background is taken from the Circuit Court of the County of St. Louis's opinion denying Petitioner's motion for post-conviction relief:

> The evidence adduced at trial was that on December 19, 2005, at about noon, J.S. went down into her basement to place some items in storage and found [Petitioner] standing in the area where J.S.'s daughter's bed was located. Although she did not immediately recognize him, J.S. soon realized that the man in her basement was a neighbor she only knew as Harold. J.S. testified that she had never had any dealings with [Petitioner] except to answer the door one time when [Petitioner] came over looking for J.S.'s daughter. J.S. testified that no one else was home and she did not know how [Petitioner] got into the basement. She noticed that [Petitioner] was wearing gloves and that there was a black-handled steak knife on her daughter's bed. J.S. had never seen that knife before and assumed that [Petitioner] had brought it with him. [Petitioner] grabbed J.S. by her

wrists, sat her down and started talking to her about having romantic feelings for J.S.'s daughter. After some time had passed [Petitioner] moved J.S. over to the bed, pushed her onto the bed, removed her clothing and then vaginally and anally penetrated her with his penis. After the attack, [Petitioner] kept J.S. in the basement and continued to talk to her. Eventually, [Petitioner] told J.S. to go and J.S. ran up the basement steps and out the door. J.S. drove directly to the Hazelwood Police Department and reported that she'd been sexually assaulted. At trial, expert witnesses called by the State established that [Petitioner]'s DNA linked him to the assault on J.S.

[Petitioner] testified at trial that he and J.S. had a relationship and that their sexual encounter was consensual.

(Resp't Ex. 7 at 50-51).

## II.   PROCEDURAL BACKGROUND

Petitioner's first trial related to the above events resulted in a hung jury and mistrial. (Resp't Ex. 1 at 44). On November 14, 2008, after a second trial, Petitioner was found guilty of forcible rape, forcible sodomy, burglary in the first degree, felonious restraint, and two counts of armed criminal action. (*Id.* at 87-96). On December 19, 2008, the court sentenced Petitioner to thirty years for forcible rape and thirty years for forcible sodomy, to run concurrently; to ten years for burglary, to run consecutively with the thirty-year sentences; to three years for each count of armed criminal action, to run concurrently with the ten-year sentence; and to seven years for felonious restraint, to run concurrently with the ten-year sentence. (*Id.* at 106-10). Petitioner's total sentence length was forty years. (Resp't Ex. 7 at 52).

On December 19, 2008, Petitioner filed a notice of appeal. (Resp't Ex. 1 at 111). On March 9, 2010, the Missouri Court of Appeals affirmed Petitioner's conviction and sentence. (Resp't Ex. 5). Petitioner did not seek transfer to the Missouri Supreme Court. On May 24, 2010, Petitioner filed a *pro se* Rule 29.15 motion for post-conviction relief. (Resp't Ex. 7 at 4-22). The motion was subsequently amended by appointed counsel. (Resp't Ex. 7 at 25-38). On January 24, 2011, the Circuit Court denied the amended motion. (Resp't Ex. 7 at 50-55). On March 6, 2012,

the Missouri Court of Appeals affirmed the decision denying the motion for post-conviction relief. (Resp't Ex. 10 & Resp't Ex. 11). The mandate issued on March 29, 2012. (Resp't Ex. 12).

On February 14, 2013, Petitioner filed his *pro se* petition in the instant action, in which he asserted a single ground for relief: violation of his right to due process of law based on the state trial court's failure to grant his motion for judgment of acquittal regarding armed criminal action offenses.[1] (Doc. 1). Respondent filed a response. (Doc. 9). Petitioner subsequently filed letters addressed to the undersigned that appeared to raise additional, unrelated issues, and the undersigned granted Petitioner additional time to file an amended petition that included all grounds for relief that Petitioner wished the Court to consider. (Doc. 16). On October 9, 2013, Petitioner filed an amendment to his petition consisting of a narrative description of several of his trial counsel's alleged failings. (Doc. 19). Respondent filed a second response. (Doc. 20).

Construing the petition and amended petition as broadly as possible, Petitioner is arguably asserting six grounds for relief: (1) violation of his right to due process of law based on the state trial court's failure to grant his motion for judgment of acquittal regarding armed criminal action offenses; (2) ineffective assistance of trial counsel based on a failure to call witnesses endorsed by Petitioner; (3) ineffective assistance of trial counsel based on a failure to challenge and/or obtain forensic evidence related to the bedding present at the crime scene; (4) ineffective assistance of trial counsel based on a failure to address the lack of footprints in the photographs taken of the ground around the crime scene; (5) ineffective assistance of trial counsel based on trial counsel's handling of evidence that the victim had had a bowel movement

---

[1] Although the petition was not received by this Court until March 1, 2013, Petitioner verified that the petition was placed in the prison mailing system on February 14, 2013. (Doc. 1 at 15). Applying the prison mailbox rule, *Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999), abrogated on other grounds by *Riddle v. Kemna*, 523 F.3d 850 (8th Cir. 2008), the undersigned determines the initial petition to have been filed on February 14, 2013.

in her underpants after being raped; and (6) ineffective assistance of trial counsel based on trial counsel's decision not to bring up the presence of condoms and sex toys at the crime scene.[2]

### III. DISCUSSION

#### A. The Petition Should Be Dismissed As Untimely

Respondent's first argument is that the instant action must be dismissed because neither the initial petition nor the amended petition was timely filed. Petitioner has not responded to this argument. For the reasons stated below, the undersigned agrees with Respondent and recommends that the action be dismissed as untimely.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year statute of limitations for habeas corpus petitions. 28 U.S.C. § 2244(d)(1). Failure to file within one year requires dismissal of the petition for a writ of habeas corpus. *See Cross–Bey v. Gammon*, 322 F.3d 1012, 1014-16 (8th Cir. 2003). The one-year statute of limitations begins to run on the latest of the following:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

---

[2] In his response to the amended petition, Respondent interpreted the amended petition as asserting only the first two ineffective assistance claims, which was not an unreasonable reading of the amended petition. However, the undersigned is giving every possible benefit of the doubt to Petitioner.

The latest relevant date here is the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. *See id.* § 2244(d)(1)(A). Where, as here, the petitioner does not appeal to the state's highest court, the judgment becomes final when the time for seeking review with the highest court expired. *Gonzalez v. Thaler*, 132 S.Ct. 641, 653-54 (2012). Petitioner's time for seeking review with the Missouri Supreme Court expired fifteen days after the Missouri Court of Appeals issued its opinion in his case. Mo. Sup.Ct. R. 83.02 (application for transfer to Supreme Court to be filed within fifteen days of appellate opinion). Thus, the limitations period began to run on March 24, 2010, fifteen days after the Missouri Court of Appeals issued its March 9, 2010 opinion on Plaintiff's direct appeal.

The limitations period is tolled, however, while a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. 28 U.S.C. § 2244(d)(2). The pendency of post-conviction review includes the time between the trial court's denial of post-conviction relief and the filing of an appeal from the denial. *Beery v. Ault*, 312 F.3d 948, 950 (8th Cir. 2002). It also includes the time during the appeal process, up through the date on which the court of appeals issues its mandate. *Payne v. Kemna*, 441 F.3d 570, 572 (8th Cir. 2006). On May 24, 2010, Petitioner filed his motion for post-conviction relief, tolling the statute of limitations. (Resp't Ex. 7 at 4-22). At that time, 61 days of the limitations period had run, and 304 days remained. The Missouri Court of Appeals issued its mandate on March 29, 2012. Thus, the limitations period began to run again on March 30, 2012, and it ended 304 days later, on January 28, 2013. Plaintiff did not file his initial habeas petition in this Court until more than two weeks later, on February 14, 2013, and he did not file his amended petition

until several months after that. Therefore, both the initial petition and amended petition were filed outside of the limitations period and should be dismissed.

Although Petitioner has not argued that he is entitled to equitable tolling, the undersigned nonetheless has considered the issue. "'Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Burns v. Prudden*, 588 F.3d 1148, 1150 (8th Cir. 2009) (quoting *Walker v. Norris*, 436 F.3d 1026, 1032 (8th Cir. 2006)). Here, there is nothing in the record to indicate either that Petitioner was pursuing his rights diligently or that any extraordinary circumstances prevented him from filing his petition within the limitations period. He waited 304 days after the conclusion of his post-conviction proceedings to file his federal habeas petition, with no apparent justification. Thus, Petitioner is not entitled to equitable tolling of the statute of limitations, and this action should be dismissed as time-barred.

**B. In the Alternative, Each of Petitioner's Claims Should Be Dismissed Either as Procedurally Defaulted or on the Merits**

### 1. *Applicable Legal Standards*

#### a. *Standard for Reviewing Claims on the Merits*

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

### b. *Procedural Default*

To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly

raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "'present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.'" *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

### 2. Ground One (Violation of Due Process As to Armed Criminal Action Offenses) Should Be Denied on the Merits

In Ground One, Petitioner argues that his due process rights were violated when the state trial court refused to grant Petitioner's motion for judgment of acquittal regarding armed criminal action offenses**.** Petitioner argues that the state failed to prove beyond a reasonable doubt that Petitioner knowingly committed the offenses of forcible rape and forcible sodomy "by, with, or through the use, assistance, or aid of a dangerous instrument," as required by Mo. Rev. Stat. 571.015, because the victim never saw the knife on Petitioner, there was no evidence that Petitioner ever mentioned or touched the knife, and Petitioner never threatened to use the knife. This claim was raised in Petitioner's direct appeal and was rejected on its merits by the Missouri Court of Appeals. (Resp't Ex. 4 & Resp't Ex. 5).

"[A] conviction transgresses the bounds of due process if 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Nance v. Norris*, 392 F.3d 284, 289-90 (8th Cir. 2004) (citing *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)). On the other hand, "evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012) (quoting *Jackson*, 443 U.S. at 319). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. The scope of habeas review of a state court's finding that there was sufficient evidence to support a conviction is "extremely limited." *Skillicorn v. Luebbers*, 475 F.3d 965, 977 (8th Cir. 2007). This Court may grant habeas relief only if the Missouri Court of Appeals' determination that the evidence satisfied the sufficiency of evidence standard under *Jackson* was "'both incorrect *and* unreasonable.'" *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011) (quotation marks omitted); *see also McDaniel v. Dormire*, No. 4:11CV00793 AGF, 2014 WL 4912098, at *7 (E.D. Mo. Sept. 30, 2014).

Under Missouri law, a person is guilty of armed criminal action if he or she "commits any felony under the laws of [the state of Missouri] by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon . . . ." Mo. Rev. Stat. 571.015. Here, a review of the record demonstrates that the Missouri Court of Appeals reasonably determined that, viewing the evidence in the light most favorable to the verdict, there was sufficient evidence to support Petitioner's conviction for armed criminal action. The Missouri Court of Appeals began its analysis by noting that a defendant may be convicted of armed criminal action if the defendant's

use of a dangerous instrument has aided the defendant in committing a felony by placing the victim in fear and forcing the victim to the place where the crime is committed, even if the defendant does not have the dangerous instrument in hand while committing the crime. (Resp't Ex. 5 at 3 (citing *State v. Hyman*, 11 S.W.3d 838 (Mo. App. W.D. 2000); *State v. Boyd*, 844 S.W.2d 524 (Mo. App. E.D. 1992)). As the Missouri Court of Appeals explained, the evidence at trial showed that Petitioner grasped the victim by the wrists and pulled her toward a bed in her daughter's bedroom, where there was a steak knife on the end of the bed. (Resp't Ex. 5 at 3). The victim had never seen the knife before and believed the defendant had brought it with him. (*Id.*) Both the victim and her daughter testified that her daughter was not in the habit of keeping knives in her bedroom, which was in the basement of the house. (*Id.*) The victim testified that she did not fight Petitioner and testified that she responded in the affirmative when he asked her if she liked it. (*Id.* at 3-4). She testified that she would have said anything to appease Petitioner, because she just wanted to live. (*Id.* at 4). After raping and sodomizing the victim, Petitioner asked the victim if she was going to stab him, an apparent acknowledgment of the presence of the knife. (*Id.*). As the Missouri Court of Appeals reasonably found, a rational trier of fact could conclude from this evidence that Petitioner had placed the knife on the bed and pulled the victim to the bed where she could see the knife, thereby placing her in fear and enabling him to overcome her resistance. (*Id.*). The Missouri Court of Appeals thus reasonably concluded that there was sufficient evidence from which the jury could find that he committed the forcible rape and forcible sodomy through the aid of a dangerous instrument. (*Id.*).

Because the Missouri Court of Appeals reasonably applied the standard articulated in *Jackson* and its decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, Ground One should be denied.

### 3. Grounds Two Through Six (Ineffective Assistance of Counsel) Should Be Denied As Procedurally Defaulted

In Grounds Two through Six, Petitioner argues that his trial counsel was ineffective in several ways. Respondent argues that all of Petitioner's ineffective assistance of counsel claims have been procedurally defaulted, and the undersigned agrees.

In Missouri, claims of ineffective assistance of trial counsel must be brought through a Rule 29.15 motion for post-conviction relief. Mo. Sup. Ct. Rule 29.15(a). An ineffective assistance of counsel claim is procedurally defaulted if a petitioner fails to raise it in a Rule 29.15 motion or fails to raise it in the appeal from the denial of such a motion. *See Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006). Two of Petitioner's ineffective assistance of counsel claims (Grounds Four and Five) were never raised in state court. The other three ineffective assistance of counsel claims (Grounds Two, Three, and Six) were at least arguably asserted in Petitioner's *pro se* motion for post-conviction relief. (Resp't Ex. 7 at 4-22). However, his post-conviction relief counsel did not include those claims in the amended Rule 29.15 motion for post-conviction relief or in the appeal from the denial of that motion. (*Id.* at 25-38, Resp't Ex. 8). Therefore, none of Petitioner's claims of ineffective assistance of counsel were properly presented to the Missouri courts, and they are procedurally defaulted. *See Interiano*, 471 F.3d at 856-57 (claims included in *pro se* motion for post-conviction relief under Rule 29.15 but not included in amended motion by appointed counsel or in appeal from denial of that motion are procedurally defaulted); *see also Wills v. State*, 321 S.W.3d 375, 386-87 (Mo. Ct. App. 2010) (under Missouri law, claims included in a *pro se* motion for post-conviction relief but not in a subsequent amended motion were "not properly before the motion court because they were a nullity" ).

As discussed above, a state prisoner can overcome such a procedural default only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner does not argue that new evidence demonstrates his actual innocence, so there is no fundamental miscarriage of justice issue in this case. Petitioner also offers no argument for finding cause and prejudice to excuse his procedural default. However, the Supreme Court has recognized that a defaulted claim of ineffective assistance of trial counsel may be excused if the default was due to ineffective assistance of post-conviction relief counsel. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012). To overcome his procedural default under *Martinez*, Petitioner must show (1) that post-conviction counsel was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)," and (2) "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318. The second prong is evaluated by determining whether Petitioner has made a substantial case under the *Strickland v. Washington* standards. *See Dansby v. Hobbs*, 766 F.3d 809, 834-36 (8th Cir. 2014); *Sund v. Young*, No. 5:14-CV-05070-KES, 2015 WL 4249405, at *4-*5 (D.S.D. July 13, 2015).

To show ineffective assistance of counsel under *Strickland v. Washington*, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." 466 U.S. at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial

scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Petitioner cannot satisfy either prong of the *Martinez* inquiry as to any of his defaulted ineffective assistance claims. As to the first *Martinez* prong, Petitioner cannot establish that his post-conviction relief counsel was ineffective under *Strickland* for failing to include Petitioner's additional ineffective assistance of counsel claims in the amended motion for post-conviction relief. The Eighth Circuit has explained:

> When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims. Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006) (quotation marks and citations omitted). The same logic applies to claims of ineffective assistance of post-conviction relief counsel. Here, Petitioner's post-conviction relief counsel actively pursued one claim of ineffective assistance of counsel in the amended motion for post-conviction relief: a claim based on trial counsel's failure to properly raise and preserve a *Batson* challenge. (Resp't Ex. 7. at 25-38). Petitioner offers no argument or evidence to overcome the presumption that counsel's decision to focus on this claim rather than others was a reasonable strategy. Moreover, as discussed below, the ineffective

assistance claims not included were of little merit and are not clearly stronger than the one presented. Thus, Petitioner's post-conviction counsel's decision not to include these claims in the amended motion "falls within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689.

Petitioner also cannot satisfy the second *Martinez* prong, because a review of each of Petitioner's claims demonstrates that none of them has "some merit" under *Strickland*. In Ground Two, Petitioner asserts that his trial counsel was ineffective because he failed to call several witnesses endorsed by Petitioner. Petitioner asserts that the witnesses not called by his trial counsel "would and could have greatly impaired the credibility of" the victim and her daughter, (Doc. 19 at 15), but he does not explain specifically what testimony the witnesses would have offered or how that testimony would have impaired the credibility of the victim and her daughter. Petitioner also states that his witnesses would have testified "in regard to when and where the States' witness and I agreed to travel to," but again he does not indicate what the witnesses would have testified to or how their testimony would have related to the issues in the case. (*Id.*) Petitioner also states that his witnesses would have told the jury "of every incident that they could recall of the state's witnesses and [Petitioner] being present inside & outside of the residence owned by the state's witnesses" to rebut the state's "notion that [Petitioner] had no business or purpose to be at their witnesses' residence." (*Id.*) Again, however, Petitioner does not explain what incidents the witnesses would have testified to or how that testimony would have shown that Petitioner had a purpose in being at the victim's residence. Petitioner's vague statements about how calling additional witnesses could have helped him are insufficient to make a substantial case that his trial counsel showed deficient performance by not calling those witnesses. "'Decisions relating to witness selection are normally left to counsel's judgment, and

this judgment will not be second-guessed by hindsight.'" *Hanes v. Dormire*, 240 F.3d 694, 698 (8th Cir. 2001) (quoting *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990) (en banc)). Even when a potential witness' testimony might have been helpful, to establish grounds for habeas relief, a petitioner must demonstrate that counsel's choice fell outside of the wide range of strategic choices afforded counsel to prevail on an ineffective assistance claim. *Id.* Petitioner offers no basis for finding that his trial counsel's choice not to call these witnesses fell outside that wide range, and so Ground Two is without merit.

In Ground Three, Petitioner asserts that his trial counsel was ineffective because he did not challenge forensic testing of the bedding present at the crime scene, and/or did not obtain forensic evidence related to the bedding at the crime scene. However, Plaintiff's counsel *did* highlight at trial the fact that no forensic testing of the bedding had occurred: on cross-examination of the State's forensic scientists, he confirmed that they had not conducted any examination of the bedding in the case. (Resp't Ex. 13 at 591-93, 616-17). Petitioner offers nothing other than his own speculation that a request for testing of the bedding at the crime scene would have had been favorable to him or would have had any impact on the trial. Counsel's decision to highlight the State's lack of forensic testing of the bedding, rather than requesting his own forensic testing of the bedding, fell within the wide range of strategic choices available to counsel and did not render Petitioner's trial unreliable or unfair. Therefore, Ground Three is without merit.

In Ground Four, Petitioner argues that his trial counsel was ineffective because he was not "attentive" to the fact that on the day of Petitioner's arrest, there was snow on the ground, and photographs taken of the ground around the victim's house did not show footprints. However, Petitioner offers nothing other than his own speculation about what these photographs

would have shown. Moreover, the photographs were introduced as exhibits by the prosecution, (Resp't Ex. 13 at 747-48), so the most reasonable inference to be made is that the photographs were not generally supportive of Petitioner's position in the case and that declining to emphasize them was a reasonable trial strategy on the part of Petitioner's trial counsel. Thus, Ground Four is without merit.

In Ground Five, Petitioner challenges his trial counsel's handling of evidence related to the victim's testimony that she had a bowel movement in her underpants after she was raped. At trial, to undermine that testimony, Petitioner's counsel cross-examined the medical examiner about the pattern of the fecal matter found on the victim's underpants and asked the medical examiner to hold up the underpants so the jury could see them. (Resp't Ex. 13, at 584-89). Petitioner argues that his trial counsel did this in a "harsh and shocking" manner. Petitioner also argues that his trial counsel should have presented testimony from the officers who had initial contacts with the victim, who could have stated whether there was evidence of fecal matter in the seat of the car in which the victim had traveled. However, Petitioner offers nothing other than speculation about what such testimony would have shown or why it would have been more favorable to him than the testimony of the medical examiner. Petitioner's trial counsel's decision to handle this issue by cross-examining the medical examiner rather than questioning the officers falls within the wide range of strategic choices afforded counsel. Even if it did not, however, a review of the record reveals that Petitioner suffered no prejudice from his trial counsel's handling of this evidence. Whether the victim had a bowel movement in her underpants after she was raped was of little relevance in the case, particularly in light of the undisputed evidence of semen in the underpants and the victim's testimony regarding the rape. There is no reason to believe that a different handling of the issue by Petitioner's counsel would have affected the

outcome of the case in any way. Thus, Petitioner cannot demonstrate prejudice, and Ground Five is without merit.

In Ground Six, Petitioner argues that his trial counsel was ineffective because he did not allow Petitioner to present evidence that there were sex toys, sex games, and condoms involved in his encounter with the victim. However, a review of the trial transcript shows that Petitioner testified fully about those topics, both in response to questions from his trial counsel and in response to questions from the prosecution. (Resp't Ex. 13 at 680-82, 742-44). Thus, Ground Six is plainly without merit.

For all of the above reasons, Petitioner has no substantial claim that his post-conviction counsel was ineffective, and he also cannot show that any of the underlying ineffective-assistance-of-trial-counsel claims are substantial. Because Petitioner cannot satisfy either prong of *Martinez*, he cannot establish cause and prejudice to excuse his procedural default of Grounds Two through Six, and those grounds should be denied.

## IV. CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Both his petition and his amended petition were filed after AEDPA's one-year limitations period had run and were thus untimely. In the alternative, Petitioner is not entitled to habeas relief because each of his claims is either procedurally defaulted or is without merit. Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner Harold D. Isaac's petition and amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docs. 1 & 19) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that this case be **DISMISSED**.

The parties are advised that they have fourteen (14) days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of February, 2016.